**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MAUREEN CLARK, *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | No. 22 CV 4778 |
| | ) | |
| v. | ) | Hon. Andrea R. Wood |
| | ) | |
| JB PRITZKER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT JB PRITZKER'S MEMORANDUM IN SUPPORT OF HIS**
**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

**INTRODUCTION**

*Pro Se* Plaintiffs[1] Maureen E. Clark, Rochelle M. May, James R. Stirn, and Jeneane L. Ferguson bring suit under Section 1983 alleging that Defendants JB Pritzker and the Illinois State Board of Elections violated their First and Fifteenth Amendment rights to vote, as well Equal Protection and Due Process rights by "not following through […] to implement legislation to address known vulnerabilities with Dominion Image Cast X system component that can result in

---

[1] Under Federal Rule of Civil Procedure 11(a), all pleadings must be signed by the party personally if the party is unrepresented. The Complaint is signed only by Plaintiff Maureen E. Clark. ECF No. 1 at 5. The remaining plaintiffs' names are listed in the caption and a page of the Complaint titled "Complaint Form – Supplemental Information." *Id.* at 6. Plaintiff Rochell M. Maly is identified in only the case caption on the supplemental form. *Id.* Plaintiffs James R. Stirn and Jeneane L. Ferguson are listed in the body of the Complaint Form- Supplemental Information. *Id.* None of them sign the complaint besides Plaintiff Clark, nor do they provide an address, e-mail address, and phone numbers as required by Rule 11(a). "The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention." Fed. R. Civ. P. 11(a).

vote spoilage[...]" ECF. No. 1 at ¶ 10.[2] Plaintiffs further allege that Title 26 § 213.50 of the Illinois Administrative Code is unconstitutional because it "results in a centralized voting process, abdicating primary responsibility for the administration of elections to the Federal Government, in violation of Article I, Section 4, cl. 1.1. to the United States Constitution." ECF No. 1 at 6.

As a preliminary matter, Plaintiffs' complaint does not satisfy the pleading standards set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and should be dismissed for that reason alone. If the Court finds it necessary to address Plaintiffs' claims, they should be dismissed for five additional reasons. First, Plaintiffs lack standing to assert their claims. Second, Plaintiffs fail to state a claim under the First Amendment or Fifteenth Amendment. Third, Plaintiffs fail to state an equal protection or due process claim. Fourth, Plaintiffs fail to show that the 26 Ill. Admin. Code § 213.50 is unconstitutional. Fifth, Plaintiffs' claims are barred by the Eleventh Amendment.

## ARGUMENT

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. A complaint may be dismissed if the plaintiff fails to allege sufficient facts to state a cause of action that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A sufficient complaint must allege "more than a sheer possibility that a defendant has acted unlawfully" and be supported by factual content as "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pleaded facts as true, but it must also "draw on its

---

[2] Citations to the Complaint refer to numbered paragraphs in the first five pages. The sixth page, titled "Complaint Form-Supplemental Information" also contains numbered paragraphs that start again at one. Therefore, citations to page 6 of the Complaint are designed with both the page number and the numbered paragraph, e.g. "ECF No. 1 at 6, ¶ 1."

judicial experience and common sense" to determine if the plaintiff has stated a plausible claim for relief. *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009), *quoting Iqbal,* 556 U.S. at 678. If, upon its review, the court determines that a plaintiff has failed to meet this plausibility requirement, the matter should be dismissed.

Even under a more lenient pleading standard provided to *pro se* litigants, if the facts as alleged in a complaint fail to state a plausible cause of action, then the cause should be dismissed. *Rufus v. City of Chicago*, No. 18 C 7753, 2021 U.S. Dist. LEXIS 53364, at *5 (N.D. Ill. Mar. 22, 2021); *Jones v. Saint Mary's Hospital*, No. 3:17-cv-00060, 2017 U.S. Dist. LEXIS 227115, at *2 (S.D. Ind. Apr. 25, 2017). "While courts construe pro se complaints liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers, the court need not credit a pro se plaintiff's 'bald assertions' or 'legal conclusions.'" *Rufus v. City of Chicago*, 2021 U.S. Dist. LEXIS 53364, at *5. "Even under the liberal construction standard, however, a complaint that offers labels and conclusions or formulaic recitation of the elements of a cause of action will not do." *Jones v. Saint Mary's Hospital*, No. 3:17-cv-00060, 2017 U.S. Dist. LEXIS 227115, at *2 (S.D. Ind. Apr. 25, 2017) (internal quotation marks omitted).

I.     **Plaintiffs' Complaint pleads only conclusions, and must be dismissed.**

Plaintiffs have not alleged any facts to support the premise on which their claims are based, namely that "vote spoilage which has been an ongoing issue since 2019" has occurred and that there are "known vulnerabilities with Dominion ImageCast X system component." ECF No. 1 at ¶10. *Iqbal* and *Twombly* require that a plaintiff, even a pro se one, alleges facts that raise claims beyond conclusion and speculation into the realm of plausibility. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. Plaintiffs fail to do so, and their claims should be dismissed.

**II.      Plaintiffs lack standing to assert their claims.**

Plaintiffs lack standing because they do not and cannot plausibly plead that they have suffered any particularized or concrete injury as a result of Defendant Pritzker "not following through […] to implement legislation to address known vulnerabilities with Dominion Image Cast X system component that can result in vote spoilage[...]" ECF. No. 1 at ¶ 10.  Rather, they simply express disagreement with how the State of Illinois has chosen to ensure the cybersecurity of its elections. Courts have repeatedly held that such allegations are insufficient to confer standing.

 No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies. *Id.* (citing *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). Standing to sue is rooted in the traditional understanding of a case or controversy, and the "irreducible constitutional minimum" of standing consists of three elements. "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (citing *Raines*, 521 U.S. at 802; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). This doctrine "limits the category of litigants empowered to maintain a lawsuit in federal court," and in this way "serves to prevent the judicial process from being used to usurp the powers of the political branches and confines the federal courts to a properly judicial role." *Spokeo*, 578 U.S. at 338 (citations omitted).

Injury in fact is the "first and foremost of standing's three elements." *Id.* (citing *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 103 (1998)). To establish injury in fact, a plaintiff must show that he or she "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339 (citations omitted). For an injury to be particularized, "it must affect the plaintiff in a personal and

4

individual way." *Id*. While particularization is necessary to establish injury, it alone is not sufficient. To establish standing, an injury must also be concrete—that is, it must actually exist, rather than simply being an abstract concept. *Id.* at 339–40.

The Supreme Court has consistently held that "a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573–74; *see also Fairchild v. Hughes*, 258 U.S. 126, 129–30 (1922) ("Plaintiff has asserted only the right, possessed by every citizen, to require that the Government be administered according to law. . . . Obviously this general right does not entitle a private citizen to institute in the federal courts a suit."); *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923) ("The party who invokes the power [of judicial review] must be able to show not only that the statute is invalid but that he has sustained or is immediately in danger of sustaining some direct injury as a result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally.").

Here, Plaintiffs assert generally that Defendants did not take action to implement legislation to address purported cybersecurity vulnerabilities with Illinois' voting system, and that this inaction violates Plaintiffs' First Amendment and Fifteenth Amendment right to vote. ECF No. 1 a ¶10. This claim fails to establish injury for standing purposes for three reasons. First, it is a purely conclusory claim. Second, a separate allegation in Plaintiffs' own complaint contradicts their claim that no action was taken to protect Illinois election cybersecurity. Specifically, Plaintiffs claim that a provision of the Illinois Administrative Code pertaining to election cybersecurity violates the Elections Clause of the United States Constitution. *Id.* at 6, ¶ 6. That

provision sets forth the requirements of election authorities to receive federal grant money[3] earmarked for election cybersecurity efforts and for the allocation of resources for that purpose. 26 Ill. Admin. Code. § 213.50. Plaintiffs' argument appears to be that by requiring election authorities to join a Cyber Navigator Program whose express purpose is to "to support the efforts of election authorities to defend against cyber breaches and detect and recover from cyber-attacks," 26 Ill. Admin. Code § 213.10, in order to receive federal funding, that state elections are no longer controlled by the state, thus violating the Elections Clause[4] of the U.S. Constitution. The lack of merit to  this argument isaddressed further below. However, the establishment and continued existence of the Cyber Navigator Program referred to in 26 Ill. Admin. Code § 213 *et seq.,* is the opposite of inaction towards addressing vulnerabilities with Illinois' election apparatuses, and thus by alleging contradictory facts, Plaintiffs have in effect, pleaded themselves out of court. *Thompson v. Illinois Department of Professional Regulation*, 300 F.3d 750, 753-754 (7th Cir. 2002); *Epstein v. Epstein*, 843 F.3d 1147, 1150 (7th Cir. 2016) ("[A] plaintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits.") Here, Plaintiffs' complaint is *internally* contradictory and thus fails to establish injury-in-fact for standing purposes. Third, Plaintiffs have failed to indicate how they are harmed or how their right to vote has been impinged by Defendants' alleged election cybersecurity legislation inaction, and instead allege generally that "this is a civil rights action brought to enforce the fundamental right to vote." ECF No. 1 at ¶6.

---

[3] The Illinois Administrative Code refers to funds from the Help America Vote Act of 2002 (HAVA) Pub. L. No. 107-252, 116 Stat. 1666 (originally codified at 42 USC § 15301 and later editorially reclassified as 52 USC § 20901), and the "2018 HAVA Election Security Grant." 26 Ill. Adm. Code §§ 213.10 & 213.50.

[4] The Elections Clause provides that "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators." U.S. Const. Art. I, § 4, Cl 1.

Such broad allegations of harm are exactly the type considered by the Supreme Court in *Lujan*,[5] *Fairchild*,[6] and *Massachusetts*,[7] and found to be insufficient to provide standing. Plaintiffs do nothing more than raise a "generally available grievance about government," and seek relief that "no more directly and tangibly benefits [them] than it does the public at large." *Lujan*, 504 U.S. at 573–74. Plaintiffs have done nothing more than raise the issue of whether Illinois has taken appropriate steps to ensure the cybersecurity of its elections as a whole.

Indeed, the Supreme Court has already held that the sort of injury alleged here— specifically, the assertion that the Elections Clause has not been followed, and that the right to vote has somehow been impaired as a result—is not sufficient to confer standing on a plaintiff. *Lance v. Coffman*, 549 U.S. 437, 442 (2007). Rather, "[t]his injury is precisely the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance in the past." *Id.*; *see also United States v. Richardson*, 418 U.S. 166, 176-77 (1974) (dismissing federal taxpayer claim as a "generalized grievance that is plainly differentiated and common to all members of the public"). In *Lance*, plaintiffs were four voters who brought a claim alleging that the Colorado Supreme Court's interpretation of a Colorado state constitution provision regarding congressional redistricting violated the Elections Clause. Lance, 549 U.S. at 441-442. The Supreme Court discussed its long history of refusing to be a court of generalized grievances, and found that "[b]ecause plaintiffs assert no particularized stake in the litigation, we hold that they lack standing to bring their Elections Clause claim. *Id.* at 442.

Here, Plaintiffs articulate no injury, either particularized or concrete, that they have allegedly suffered as a result of the Defendants' purported inaction or 26 Ill. Admin. Code §

---

[5] 504 U.S. at 573–74.
[6] 258 U.S. at 129–30.
[7] 262 U.S. at 448.

213.50; rather, they simply express disagreement with Illinois' course of conduct to address cybersecurity. Plaintiffs' lawsuit is nothing more than "an alleged violation of a right to have the Government act in accordance with law"—a claim that is not judicially cognizable because "assertion of a right to a particular kind of Government conduct, which the Government has violated by acting differently, cannot alone satisfy the requirements of Art. III without draining those requirements of meaning." *Lujan*, 504 U.S. at 575–76.

Courts that have considered similar claims in other states have similarly concluded that the plaintiffs in those cases lacked standing. For example, in *Feehan v. Wis. Elections Comm'n*, 506 F. Supp. 3d 596 (E.D. Wis. 2020), Plaintiff Feehan identified himself as a resident of the State of Wisconsin, a registered voter, and "a nominee of the Republican Party to be a Presidential Elector on behalf of the State of Wisconsin." [8] *Id.* at 601. Feehan's lawsuit stemmed from the November 2020 election and alleged four counts: (1) violation of the Elections and Electors Clauses; (2) violation of the Equal Protection Clause of the Fourteenth Amendment and the "invalid enactment of regulations and disparate treatment of absentee vs. mail-in ballots;" (3) denial of the Fourteenth Amendment due process right to vote; and (4) "wide-spread ballot fraud." *Id*. Feehan sought various categories of declaratory and injunctive relief. *Id*.

The *Feehan* court dismissed the case, holding that the plaintiff had no standing to assert his claims, whether as a voter or as a candidate for the office of Elector. *See Feehan*, 506 F. Supp. 3d at 609, 613. With regard to Feehan's claims in his capacity as a voter, the court held that, "although it would over-simplify the standing analysis to conclude that no state-wide election law

---

[8] The original complaint identified a second plaintiff (Derrick Van Orden), who identified himself as "the 2020 Republican Nominee for Wisconsin's Third Congressional Seat for the U.S. House of Representatives." *Feehan*, 506 F. Supp. 3d at 601. In a subsequently filed Amended Complaint, Van Orden was removed as a plaintiff; the remainder of the Amended Complaint was the same as the original Complaint. *Feehan*, 506 F. Supp. 3d at 603.

is subject to challenge simply because it affects all voters, the notion that a *single person's* vote will be less valuable as a result of unlawful or invalid ballots being cast is not a concrete and particularized injury necessary for Article III standing." *Id*. at 608 (emphasis in original). The *Feehan* court also found that the plaintiff lacked standing to assert his claims as a nominee for Elector, noting that Electors' interest in "seeing that every valid vote is correctly counted and that no vote is diluted is no different than that of an ordinary voter," thus relegating those claims to the same category of "undifferentiated, generalized grievance[s] about the conduct of government that the Supreme Court has long considered inadequate for standing." *Feehan*, 506 F. Supp. 3d at 611 (citing *Lance v. Coffman*, 549 U.S. 437, 442 (2007)).

Here, Plaintiffs do not specify precisely *how* the Defendants' purported inaction or 26 Ill. Admin. Code § 213.50 harms them or their ability to vote; one assumes that Plaintiffs' concern lies in the possibility of their chosen candidate not being elected. First, any such claims are wholly speculative. *See, e.g., Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410-411 (2013) (holding that standing was not conferred by an alleged "speculative chain of possibilities" that failed to show any threat of imminent harm or any concrete injury traceable to the statute at issue). To state such a claim, Plaintiffs would have to plausibly allege that Defendants' purported failure to implement election cyber security measures caused a breach in cyber security that resulted in a win for their candidate's opponent. Plaintiffs allege no facts in support of such an assertion. Moreover, while having one's vote counted as part of a valid election process is certainly a right afforded under the United States Constitution, the right to have one's candidate of choice declared the victor is not. *See, e.g., Feehan*, 506 F. Supp. 3d at 609.

The concept of standing also dictates that "a plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Id.* at 610. For the reasons explained above, Plaintiffs also lack

standing because their requested remedy—unspecified compensatory damages and unspecified injunctive and declaratory relief —is not relief tailored to the alleged injury.

Because Plaintiffs have neither articulated a concrete or particularized injury in fact, nor stated claims that are redressable by this Court, they do not have standing to bring this lawsuit. For this reason, their Complaint should be dismissed with prejudice.

**III.** **Plaintiffs do not allege any plausible violation of their First Amendment or Fifteenth Amendment rights to vote.**

Plaintiffs also fail to allege any plausible claims under the First Amendment or Fifteenth amendments. Plaintiffs frame their allegations, in part, as an effort to vindicate their First Amendment right to vote. ECF No. 1 at ¶ 6. But Plaintiffs do not plausibly explain how their right to vote is impinged by the Defendants' alleged inaction to implement legislation to address purported cybersecurity vulnerabilities in Illinois' voting system. *Id.* at ¶ 10. In fact, as mentioned above, the Illinois Administrative Code, 26 Ill. Admin. Code § 213.50, actually supports the opposite conclusion: that affirmative steps have been taken to protect Illinois' voting system from cyber-attack. The express purpose of Title 26 § 213 of the Illinois Administrative Code is to "defend against cyber breaches and detect and recover from cyber-attacks":

> a) The State Board of Elections shall provide by rule, after at least 2 Public hearings of the Board and in consultation with the election authorities, a Cyber Navigator Program to support the efforts of election authorities to defend against cyber breaches and detect and recover from cyber-attacks. The rules shall include the Board's plan to allocate any resources received in accordance with the Help America Vote Act of 2002 (HAVA) Pub. L. No. 107-252, 116 Stat. 1666 (codified at 42 USC 15301 et seq. (2002)) and provide that no less than half of any funds received shall be allocated to the Cyber Navigator Program. The Cyber Navigator Program will be designed to provide equal support to all election authorities, with allowable modifications based on need. The remaining half of the Help America Vote Act funds shall be distributed as the State Board of Elections may determine, but no grants may be made to election authorities that do not participate in the Cyber Navigator Program.(Section 1A-55 of the Code)

26 Ill. Admin. Code § 213.10. There is nothing in the Illinois Administrative Code provision cited by Plaintiffs that prevents them from exercising their constitutional right to vote.

### III. Plaintiffs' equal protection and due process claims fail.

Plaintiffs allege that Defendants violate Equal Protection and Due Process "by not following through on the Illinois State Board of Elections' […] own legislative department's recommendations to implement legislation to address known vulnerabilities with Dominion ImageCast X system component that can result in vote spoilage which has been an ongoing issue since 2019." ECF No. 1 at ¶ 10. Plaintiffs' claims fail on both counts. First, Plaintiffs do not allege that they are members of a protected class, nor apparently is this a "class of one" equal protection claim, where "(1) the plaintiff alleges that he has been intentionally treated differently from others similarly situated and (2) that there is no rational basis for the difference in treatment or the cause of the differential treatment is a "totally illegitimate animus" toward the plaintiff by the defendant." *McDonald v. Vill. of Winnetka,* 371 F.3d 992, 1001 (7th Cir. 2004). Plaintiffs allege merely that "Defendants violate Equal Protection" – not even that Defendants violate *Plaintiffs'* right to equal protection under the Fourteenth Amendment. Plaintiffs' equal protection claim should be dismissed.

Second, Plaintiffs' due process claim fails for failure to state a claim for either procedural or substantive due process. For a Section 1983 procedural due process claim, a plaintiff must show that the plaintiff was "deprived of a constitutionally protected interest in life, liberty or property," and if the plaintiff can establish such a loss, the court "then must determine what process was due regarding that loss." *Belcher v. Norton*, 497 F.3d 742, 750 (7th Cir. 2007). Plaintiffs have failed to allege facts that they were deprived of a constitutionally protected interest. As such, any procedural due process claim fails.

11

Regarding substantive due process, "Section 1983 does not confer substantive due process rights in and of itself, but instead provides a vehicle through which one can defend federal rights conferred elsewhere in the Constitution." *Myvett v. City of Chicago*, No. 13 C 3880, 2013 U.S. Dist. LEXIS 156168, at *5-6 (N.D. Ill. Oct. 31, 2013), citing *Albright v. Oliver*, 510 U.S. 266, 271, (1994). Plaintiffs cannot allege a violation of their substantive due process rights under the Fourteenth Amendment via Section 1983 when the First Amendment provides a constitutional protection against infringement of the right to vote. *Id.* (finding that Section 1983 substantive due process claim could not lie where Fourth Amendment provided protection against false arrest). Plaintiffs' substantive due process claim fails. Thus, Plaintiffs cannot state a Section 1983 claim for either procedural or substantive due process and those claims should be dismissed.

## IV. Plaintiff's constitutional challenge to 26 Ill. Admin. Code § 213.50 fails.

Plaintiffs allege that Title 26 § 213.50 of the Illinois Administrative Code is unconstitutional because it "results in a centralized voting process, abdicating primary responsibility for the administration of elections to the Federal Government, in violation of Article I, Section 4, cl. 1.1. to the United States Constitution." ECF No. 1 at 6. But 26 Ill. Admin. Code § 213.50 implements improvements to the voting system in compliance with the federal Help America Vote Act of 2002 ("HAVA") Pub. L. No. 107-252, 116 Stat. 1666 (originally codified at 42 USC § 15301 and later editorially reclassified as 52 USC § 20901). HAVA conditions the grant of federal funds to states on compliance with various measures intended to improve state administration of elections. For example,

> **(b) Use of payment.**
> **(1)** In general. A State shall use the funds provided under a payment made under this section to carry out one or more of the following activities:
> **(A)** Complying with the requirements under title III [52 USCS §§ 21081 et seq.].
> **(B)** Improving the administration of elections for Federal office.

**(C)** Educating voters concerning voting procedures, voting rights, and voting technology.
**(D)** Training election officials, poll workers, and election volunteers.
**(E)** Developing the State plan for requirements payments to be submitted under part 1 of subtitle D of title II [52 USCS §§ 21001 et seq.].
**(F)** Improving, acquiring, leasing, modifying, or replacing voting systems and technology and methods for casting and counting votes.
**(G)** Improving the accessibility and quantity of polling places, including providing physical access for individuals with disabilities, providing nonvisual access for individuals with visual impairments, and providing assistance to Native Americans, Alaska Native citizens, and to individuals with limited proficiency in the English language.
**(H)** Establishing toll-free telephone hotlines that voters may use to report possible voting fraud and voting rights violations, to obtain general election information, and to access detailed automated information on their own voter registration status, specific polling place locations, and other relevant information.

52 U.S.C. § 20901 (b). Congress may attach conditions to the receipt of federal funds as long as those conditions are not unconstitutional and are in the general interest as defined by Congress. *South Dakota v. Dole*, 483 U.S. 203, 205-209 (1987). "Where Congress requires a state to undertake certain actions, the relevant inquiry is whether the federal policy is constitutional." *Milwaukee County Pavers Assn. v. Fiedler*, 710 F. Supp. 1532, 1546 (W.D. Wis. 1989), citing *Papasan v. Allain*, 478 U.S. 265, 289 (1985). "If it is and if the state is bound to adhere to that policy, the state's action is constitutionally permissible." *Id.* Thus, in order for Plaintiffs to prevail on their constitutional challenge to 26 Ill. Admin. Code § 213.50, they would need to show that the federal statute it is tied to, HAVA, is unconstitutional.[9] This Plaintiffs have not done. Further, 26 Ill. Admin. Code §213.50 is fully consistent with the Elections Clause because its express purpose is to improve cybersecurity in Illinois' elections, and sets forth requirements for election

---

[9] "The [Election] Clause is a default provision; it invests the States with responsibility for the mechanics of congressional elections, but only so far as Congress declines to pre-empt state legislative choices. Thus it is well settled that the Elections Clause grants Congress the power to override state regulations by establishing uniform rules for federal elections, binding on the States. The regulations made by Congress are paramount to those made by the State legislature; and if they conflict therewith, the latter, so far as the conflict extends, ceases to be operative." *Foster v. Love*, 522 U.S. 67, 69 (1997) (internal quotation marks and citations omitted).

authorities to comply with in order to reduce Illinois' voting system's vulnerability to cyber-attack. Plaintiffs' claim that 26 Ill. Admin. Code § 213.50 is unconstitutional fails and should be dismissed.

**V.      The Eleventh Amendment bars suit against Defendant Pritzker.**

Plaintiffs do not specify whether they bring suit against Defendant Pritzker in his individual or official capacity. Plaintiffs also do not specify the relief they seek – only generally that they seek compensatory damages and injunctive and declaratory relief as set forth in the U.S. District Court for the Northern District of Illinois' Form Complaint for Civil Rights Violations they use. ECF No. 1 at 5. To the extent Plaintiffs bring claims against Defendant Pritzker in his official capacity, the claims are barred by the Eleventh Amendment. A state official acting in his official capacity is the State itself for purposes of the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 166-167 (1985); *MCI Telecomms. Corp. v. Ill. Bell Tel. Co.*, 222 F. 3d 323, 336-337 (7th Cir. 2000). The Eleventh Amendment bars such a suit for federal claims asserting money damages, *id*.

Although plaintiffs may be able to seek injunctive relief if the *Ex Parte Young* exception to Eleventh Amendment immunity applies, *id*.; *Ex Parte Young*, 209 U.S 123, 159-60 (1908), that exception is not available here.  To determine whether or not a complaint avoids the *Ex Parte Young* Eleventh Amendment bar, courts determine whether the "complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002); *see also Brown v. Budz*, 398 F.3d 904, 917 (7th Cir. 2005) (citing *Ex Parte Young*, 209 U.S. at 159–60). Plaintiffs appear to complain primarily of alleged inaction on the part of Defendant Pritzker to "implement legislation to address known vulnerabilities" in Illinois electronic voting machines.  ECF No. 1 at ¶ 10.  But Plaintiffs

have not alleged any facts regarding these "known vulnerabilities" and so there is nothing for Defendant Pritzker to prospectively do *vis a vis* any purported vulnerabilities. Thus, Plaintiffs cannot legitimately seek prospective injunctive relief against Defendant Pritzker. Plaintiffs also fail to adequately allege personal involvement by Defendant Pritzker for the same reason, and therefore have not stated an individual capacity claim for damages against him.

## CONCLUSION

For the foregoing reasons, Defendant JB Pritzker respectfully request that the Court grant his motion to dismiss.

Respectfully submitted,

KWAME RAOUL
Attorney General of Illinois

By:  /s/ *Marci L. Sahinoglu*
Marci L. Sahinoglu
Assistant Attorney General
100 W. Randolph Street, 13th Floor
Chicago, Illinois 60601
312.814.3131
marci.sahinoglu@ilag.gov

*Counsel for Defendants*

15