IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MAUREEN CLARK, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | No. 22 CV 4778 |
| ) | |
| v. ) | Hon. Andrea R. Wood |
| ) | |
| JB PRITZKER, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANT JB PRITZKER'S MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

**INTRODUCTION**

*Pro Se* Plaintiffs Maureen E. Clark, Rochelle M. May, James R. Stirn, and Jeneane L. Ferguson have filed a 44-page Second Amended Complaint containing 96 numbered paragraphs, 56 footnotes citing to external sources, and 10 voluminous exhibits. ECF Nos. 44-54. However, despite the copious information included, Plaintiffs' Second Amended Complaint suffers from the same infirmities that doomed their original and First Amended Complaints.

Plaintiffs claim that Defendants JB Pritzker and the Illinois State Board of Elections board members violated their First Amendment right to vote, as well their equal protection and due process rights, by "approv[ing] voting systems that allow for vote manipulation." ECF. No. 44 ¶ 4. Plaintiffs seek "injunctive and declaratory relief that none of the voting systems in the State of Illinois be used for another election and the electronic voting system be replaced with a hand-counted secure paper ballot manual reporting process under closed circuit television beginning with General Election 2024." *Id.* at Prayer for Relief ¶ 1.

As a preliminary matter, Plaintiffs' complaint does not satisfy the pleading standards set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and should be dismissed for that reason alone. If the Court finds it necessary to address Plaintiffs' claims, they should be dismissed for four additional reasons. First, Plaintiffs lack standing to assert their claims. Second, Plaintiffs fail to state a claim under the First Amendment, nor do they state an equal protection or due process claim. Third, Plaintiffs' claims against Governor Pritzker are barred by the Eleventh Amendment. Finally, Plaintiffs' requested relief would improperly impinge upon the State's broad authority to administer elections and therefore would violate principles of federalism and comity.

## ARGUMENT

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. A complaint may be dismissed if the plaintiff fails to allege sufficient facts to state a cause of action that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A sufficient complaint must allege "more than a sheer possibility that a defendant has acted unlawfully" and be supported by factual content, because "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must "draw on its judicial experience and common sense" to determine if the plaintiff has stated a plausible claim for relief. *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009), *quoting Iqbal,* 556 U.S. at 678.

Even under a more lenient pleading standard provided to *pro se* litigants, if the facts as alleged in a complaint fail to state a plausible cause of action, then the cause should be dismissed. *Rufus v. City of Chicago*, No. 18 C 7753, 2021 U.S. Dist. LEXIS 53364, at *5 (N.D. Ill. Mar. 22,

2021); *Jones v. Saint Mary's Hospital*, No. 3:17-cv-00060, 2017 U.S. Dist. LEXIS 227115, at *2 (S.D. Ind. Apr. 25, 2017). "While courts construe pro se complaints liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers, the court need not credit a pro se plaintiff's 'bald assertions' or 'legal conclusions.'" *Rufus*, 2021 U.S. Dist. LEXIS 53364, at *5.

Federal Rule of Civil Procedure 12(b)(1) requires the Court to dismiss any claim over which the Court lacks subject matter jurisdiction. If a defendant challenges jurisdiction, the plaintiff bears the burden of establishing that the jurisdictional requirements have been met. *Center for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014). A motion to dismiss for lack of subject matter jurisdiction presents a threshold question concerning the court's power over a claim, and a federal court must assure itself that it possesses subject matter jurisdiction over a case before it proceeds on the merits. *See Cook v. Winfrey*, 141 F.3d 322, 325 (7th Cir. 1998).

**I.    Plaintiffs' Complaint pleads only conclusions, and must be dismissed.**

Plaintiffs have not alleged any *relevant* facts to support the premise on which their claims are based, namely that "Defendants violate Plaintiffs' Civil Rights as Defendants approve voting systems that allow for vote manipulation." ECF No. 44 ¶ 4. Plaintiffs rely on a purported expert affidavit from Terpsehore Maras (the "Maras Affidavit," Exhibit 1 to ECF No. 44, filed separately as ECF No. 45) throughout their Complaint. However, the Maras Affidavit is *unsigned*, and the court should afford it no weight. *See Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994) (noting that unsigned affidavits are properly accorded "no evidentiary significance"). Even if, *arguendo*, the Maras affidavit was signed and could be considered, it contains no facts specific to Illinois or defendant Pritzker.[1]

---

[1] Moreover, nearly identical election claims relying on an affidavit from Maras have been brought and rejected in federal courts across the country. *See e.g.*, *Vent v. Fletcher*, No. 3:22-cv-1651, 2023 U.S. Dist.

3

Plaintiffs further claim that they "have suffered multiple injuries stemming from the Defendants' approving electronic voting systems that violate Plaintiffs' Constitutional rights." *Id.* ¶ 44. But Plaintiffs reference Defendant Pritzker only twice in their Complaint: once in the case caption and once in the paragraphs listing the parties, identifying him as the governor of the State of Illinois. *Id.* ¶ 16. As with their previous Complaints, Plaintiffs provide pages of allegations, but provide no nexus between those allegations and their claims against Defendant Pritzker. *Iqbal* and *Twombly* require that a plaintiff, even a *pro se* one, allege facts that raise claims beyond conclusion and speculation into the realm of plausibility. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. Plaintiffs fail to do so, and their claims should be dismissed.

## II. Plaintiffs lack standing to assert their claims.

Plaintiffs lack standing to bring their claims because they do not and cannot plausibly plead that they have suffered any particularized or concrete injury as a result of Defendant Pritzker allegedly "approv[ing] voting systems that allow for vote manipulation." ECF No. 44 ¶ 4. Courts have repeatedly held that such allegations are insufficient to confer standing. "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal court jurisdiction to actual cases or controversies." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (citing *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). Standing to sue is rooted in the traditional understanding of a case or controversy,

---

LEXIS 91324, *9-10 (S. D. Cal. May 24, 2023) (discussing five other cases that relied on the "Trapdoor mechanism" raised in the Maras affidavit that were properly dismissed by district courts in the Ninth Circuit for lack of standing and denying leave to amend on futility grounds); *Jerusalem v. Dep't of State La.*, Civ. Action No. 22-516, 2023 U.S. Dist. LEXIS 121596, *5 (M.D. La. June 26, 2023) ("Plaintiff points to the testimony of Maras and Dr. Halderman to show that Defendants in this case were aware, or should have been aware, of vulnerabilities in the Dominion voting machines, and they nevertheless permitted the machines to be used in statewide elections in violation of the Louisiana Election Code and HAVA.") (Magistrate recommendation of dismissal for lack of standing adopted and dismissal entered, 2023 U.S. Dist. LEXIS 121154 (M. D. La July 13, 2023)).

and the "irreducible constitutional minimum" of standing consists of three elements. "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Raines*, 521 U.S. at 802; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). This doctrine "limits the category of litigants empowered to maintain a lawsuit in federal court," and in this way "serves to prevent the judicial process from being used to usurp the powers of the political branches and confines the federal courts to a properly judicial role." *Spokeo*, 578 U.S. at 338 (citations omitted).

Injury in fact is the "first and foremost of standing's three elements." *Id.* (citing *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 103 (1998)). To establish injury in fact, a plaintiff must show that he or she "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339 (citations omitted). For an injury to be particularized, "it must affect the plaintiff in a personal and individual way." *Id*. While particularization is necessary to establish injury, it alone is not sufficient. To establish standing, an injury must also be concrete—that is, it must actually exist, rather than simply being an abstract concept. *Id.* at 339–40.

The Supreme Court has consistently held that "a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573–74; *see also Fairchild v. Hughes*, 258 U.S. 126, 129–30 (1922) ("Plaintiff has asserted only the right, possessed by every citizen, to require that the Government be administered according to law. . . . Obviously this general right does not entitle a private citizen to institute in the federal courts a suit."); *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923) ("The

5

party who invokes the power [of judicial review] must be able to show not only that the statute is invalid but that he has sustained or is immediately in danger of sustaining some direct injury as a result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally.").

Here, Plaintiffs assert generally that Defendants approved voting systems that allow for vote manipulation, and that this violates Plaintiffs' First Amendment right to vote, and Plaintiffs' due process and equal protection rights. This claim fails to establish injury for standing purposes for three reasons. First, it is a purely conclusory claim – as plaintiffs do not allege any specific facts that would show that Illinois' voting systems allow for vote manipulation. Second, Plaintiffs have failed to indicate how they are harmed or how their right to vote has been impinged by Defendants' alleged approval of voting systems. Such broad allegations of harm are exactly the type considered by the Supreme Court in *Lujan*, 504 U.S. at 573–74; *Fairchild*, 258 U.S. at 129–30; and *Mellon*, 262 U.S. at 448; and found to be insufficient to provide standing. Plaintiffs do nothing more than raise a "generally available grievance about government," and seek relief that "no more directly and tangibly benefits [them] than it does the public at large." *Lujan*, 504 U.S. at 573–74. Plaintiffs have done nothing more than raise the issue of whether all voting systems in the United States are vulnerable to vote manipulation.

Indeed, the Supreme Court has already held that the sort of injury alleged here—that the right to vote has somehow been impaired—is not sufficient to confer standing on a plaintiff. *Lance v. Coffman*, 549 U.S. 437, 442 (2007). Rather, "[t]his injury is precisely the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance in the past." *Id.*; *see also United States v. Richardson*, 418 U.S. 166, 176-77 (1974) (dismissing federal taxpayer claim as a "generalized grievance that is plainly differentiated and common to all members of the public"). In *Lance*, plaintiffs were four voters who brought a claim

alleging that the Colorado Supreme Court's interpretation of a Colorado state constitution provision regarding congressional redistricting violated the Elections Clause. *Lance*, 549 U.S. at 441-442. The Supreme Court discussed its long history of refusing to be a court of generalized grievances, and found that "[b]ecause plaintiffs assert no particularized stake in the litigation, we hold that they lack standing to bring their Elections Clause claim." *Id.* at 442.

Here, Plaintiffs articulate no injury, either particularized or concrete, that they have allegedly suffered as a result of the Defendants' alleged approval of voting systems "that allow for vote manipulation"; rather, they simply express concern that *all* of the voting systems in the country are vulnerable to vote manipulation. Plaintiffs' "assertion of a right to a particular kind of Government conduct, which the Government has violated by acting differently, cannot alone satisfy the requirements of Art[icle] III without draining those requirements of meaning." *Lujan*, 504 U.S. at 575–76.

Courts that have considered similar claims in other states have similarly concluded that the plaintiffs in those cases lacked standing. For example, in *Feehan v. Wisconsin Elections Commission*, 506 F. Supp. 3d 596 (E.D. Wis. 2020), the plaintiff identified himself as a resident of the State of Wisconsin, a registered voter, and "a nominee of the Republican Party to be a Presidential Elector on behalf of the State of Wisconsin." *Id.* at 601. Feehan's lawsuit stemmed from the November 2020 election and alleged, *inter alia*, violation of the Equal Protection Clause of the Fourteenth Amendment and the "invalid enactment of regulations and disparate treatment of absentee vs. mail-in ballots;" denial of the Fourteenth Amendment due process right to vote; and "wide-spread ballot fraud." *Id*. The *Feehan* court dismissed the case, holding that the plaintiff had no standing to assert his claims, whether as a voter or as a candidate for the office of Elector. *See Feehan*, 506 F. Supp. 3d at 609, 613. With regard to Feehan's claims in his capacity as a voter, the court held that, "although it would over-simplify the standing analysis to conclude that no state-

wide election law is subject to challenge simply because it affects all voters, the notion that a *single person's* vote will be less valuable as a result of unlawful or invalid ballots being cast is not a concrete and particularized injury necessary for Article III standing." *Id*. at 608 (emphasis in original).

More recently, the court in *Bost v. Illinois State Board of Elections*, No. 22-cv-2754, 2023 U.S. Dist. LEXIS 129059 (N.D. Ill. July 26, 2023), similarly held that voters lacked standing to bring similar claims. The plaintiffs in *Bost* were former and prospective candidates for federal office as well as registered voters who sued the Illinois State Board of Elections alleging that the Ballot Receipt Deadline Statute, which allowed votes to be counted fourteen days after Election Day, diluted their votes. *Id.* at *2. The Court found that the "[p]laintiffs' contention that the Ballot Receipt Deadline Statute inflicts an injury sufficient to confer Article III standing fails because it is not specific to Plaintiffs." *Id.* at 16. Further, the Court rejected the *Bost* plaintiffs' vote dilution argument, noting that federal courts have "declined to apply the doctrine of vote dilution to voter fraud allegations" and that "[p]laintiffs do not allege that any illegal ballots were cast in any election—they merely suggest the possibility of such votes being counted." *Id.* at 20-21.

Similarly, here, Plaintiffs do not specify precisely *how* the Defendants' alleged approval of voting systems harms them or their ability to vote; one assumes that Plaintiffs' concern lies in the possibility of their chosen candidate not being elected. But any such claims are wholly speculative. *See, e.g., Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410-11 (2013) (holding that standing was not conferred by an alleged "speculative chain of possibilities" that failed to show any threat of imminent harm or any concrete injury traceable to the statute at issue). To state such a claim, Plaintiffs would have to plausibly allege that Defendants' approval of voting systems that allow for vote manipulation led to *actual* vote manipulation and resulted in a win for their candidate's opponent. Plaintiffs allege no facts in support of such an assertion. Moreover, while having one's

8

vote counted as part of a valid election process is certainly a right afforded under the United States Constitution, the right to have one's candidate of choice declared the victor is not. *See, e.g., Feehan*, 506 F. Supp. 3d at 609.

Because Plaintiffs have neither articulated a concrete or particularized injury in fact, nor stated claims that are redressable by this Court, they do not have standing to bring this lawsuit. For this reason, their Complaint should be dismissed with prejudice.

### III. Plaintiffs do not allege any plausible violation of their First Amendment right to vote.

Plaintiffs also fail to allege any plausible claims under the First Amendment. Plaintiffs frame their allegations, in part, as an effort to vindicate their First Amendment right to vote. ECF No. 45 ¶¶ 3, 29, 57. But Plaintiffs do not plausibly explain how their right to vote is impinged by the Defendants' alleged approval of voting systems "that allow for vote manipulation." *Id.* ¶ 10. Plaintiffs' First Amendment claim is supported by conjecture and speculation, not facts, and should therefore be dismissed with prejudice.

### IV. Plaintiffs' due process, equal protection, and discrimination claims fail.

Plaintiffs allege that Defendants violate due process because "the Defendants' actions as representatives of the State are preventing life, liberty and pursuit of happiness by allowing electronic voting systems that manipulate the vote." ECF No. 44 ¶ 57. Plaintiffs further allege that Defendants violate equal protection because "the votes are manipulated giving different weight to votes." *Id.* This is pure speculation. Plaintiff has not alleged any facts to support these conclusions. Plaintiffs also alleges a claim for "Discrimination Protection" because "votes are weighted against one political belief/philosophy." *Id.* Aside from general speculation regarding the 2020 election and its outcome, Plaintiffs do not allege any facts to support a claim for

"discrimination protection." Plaintiffs' claims due process, equal protection, and "discrimination protection" counts thus fail.

*First*, Plaintiffs' due process claim fails to state a claim for either procedural or substantive due process. For a Section 1983 procedural due process claim, a plaintiff must show that the plaintiff was "deprived of a constitutionally protected interest in life, liberty or property," and if the plaintiff can establish such a loss, the court "then must determine what process was due regarding that loss." *Belcher v. Norton*, 497 F.3d 742, 750 (7th Cir. 2007). Plaintiffs have failed to allege facts showing that they were deprived of a constitutionally protected interest. As such, any procedural due process claim fails.

Regarding substantive due process, "Section 1983 does not confer substantive due process rights in and of itself, but instead provides a vehicle through which one can defend federal rights conferred elsewhere in the Constitution." *Myvett v. City of Chicago*, No. 13 C 3880, 2013 U.S. Dist. LEXIS 156168, at *5-6 (N.D. Ill. Oct. 31, 2013) (citing *Albright v. Oliver*, 510 U.S. 266, 271 (1994)). Plaintiffs cannot allege a violation of their substantive due process rights under the Fourteenth Amendment when the First Amendment provides a constitutional protection against infringement of the right to vote. *Id.* (finding that Section 1983 substantive due process claim could not lie where Fourth Amendment provided protection against false arrest). Plaintiffs' substantive due process claim fails. Thus, Plaintiffs cannot state a Section 1983 claim for either procedural or substantive due process and those claims should be dismissed.

*Second*, Plaintiffs do not allege that they are members of a protected class whose rights have been violated, nor do they allege that this a "class of one" equal protection claim, where "(1) the plaintiff alleges that he has been intentionally treated differently from others similarly situated and (2) that there is no rational basis for the difference in treatment or the cause of the differential treatment is a "totally illegitimate animus" toward the plaintiff by the defendant." *McDonald v.*

*Vill. of Winnetka,* 371 F.3d 992, 1001 (7th Cir. 2004). Plaintiffs allege merely that "Defendants violate Equal Protection" – not even that Defendants violate *Plaintiffs'* right to equal protection under the Fourteenth Amendment. Plaintiffs' equal protection claim should be dismissed.

*Third,* to the extent Plaintiff's attempt to assert a separate claim for "Discrimination Protection," this claim also fails. Plaintiffs allege a violation of "Discrimination Protection as votes are weighted against one political belief/philosophy." ECF No. 45 ¶ 57. Plaintiffs have not asserted any facts to suggest that Defendants discriminated against a political belief or philosophy. Plaintiff has thus failed to state a claim of any kind against Defendants in this regard.

## V. The Eleventh Amendment bars suit against Defendant Pritzker.

Plaintiffs bring claims against Defendant Pritzker in his official capacity seeking "injunctive and declaratory relief that none of the voting systems in the State of Illinois be used for another election and the electronic voting system be replaced with a hand-counted secure paper ballot manual reporting process under closed circuit television beginning with General Election 2024.ECF No. 45, Prayer for Relief, ¶ 1. A state official acting in his official capacity is the State itself for purposes of the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 166-167 (1985); *MCI Telecomms. Corp. v. Ill. Bell Tel. Co.*, 222 F. 3d 323, 336-337 (7th Cir. 2000). Although Plaintiffs may be able to seek injunctive relief if the *Ex Parte Young* exception to Eleventh Amendment immunity applies, *Ex Parte Young*, 209 U.S 123, 159-60 (1908), that exception is not available here. To determine whether or not a complaint avoids the *Ex Parte Young* Eleventh Amendment bar, courts determine whether the "complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002); *see also Brown v. Budz*, 398 F.3d 904, 917 (7th Cir. 2005) (citing *Ex Parte Young*, 209 U.S. at 159–60). It is not clear whether Plaintiffs complain of voting systems that have already been approved by Defendant Pritzker or will be approved in

the future. Nonetheless, Plaintiffs have not alleged any relevant facts supporting their allegations that Defendant Pritzker has approved "voting systems that allow for vote manipulation" and so there is nothing for Defendant Pritzker to prospectively approve or disapprove. Thus, Plaintiffs cannot legitimately seek prospective injunctive relief against Defendant Pritzker.

## VI. Plaintiffs' requested relief would improperly interfere with the State's administration of elections, and therefore violates principles of federalism and comity.

Finally, the relief Plaintiffs seek, a wholesale ban on electronic voting machines in favor of paper ballots and manual counting, would improperly infringe on the State's authority to conduct elections. The Constitution "confers on the states broad authority to regulate the conduct of elections, including federal ones." *Griffin v. Roupas*, 385 F.3d 1128, 1130 (7th Cir. 2004); *see also Shelby County, Ala. v. Holder*, 133 S. Ct. 2612, 2623 (2013) ("States have broad powers to determine the conditions under which the right of suffrage may be exercised.") (citation and internal quotation marks omitted)). Given the extraordinary nature of the injunctive relief that Plaintiffs seek, comity and federalism weigh against allowing this case to proceed.

In *Rizzo v. Goode*, 423 U.S. 362 (1976), the Supreme Court instructed that to obtain injunctive relief on a matter traditionally reserved to the discretion of a state or local government agency, a plaintiff must overcome the steep hurdle set by "the well-established rule that the Government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs.'" *Id*. at 378–79 (quotations omitted). In such cases, federal courts are to issue injunctions "sparingly, and only in a clear and plain case." *Id*. at 378. This strong preference against intrusive injunctive relief is primarily founded on "delicate issues of federal state relationships" (*Id*. at 380 (quotation omitted)), which are premised on "the principles of equity, comity, and federalism." *Id*. at 379 (quotation omitted). In *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1071 (7th Cir. 2018), the Seventh Circuit affirmed the continued relevance of *Rizzo*, observing that "federal

courts must be constantly mindful of the 'special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law.'" *Id*. at 1073 (quoting *Rizzo*, 423 U.S. at 378). *See also J.B. v. Woodard*, 997 F.3d 714, 22 (7th Cir. 2021) "A common thread underlying the Supreme Court's abstention cases is that they all implicate (in one way or another and to different degrees) underlying principles of equity, comity, and federalism foundational to our federal constitutional structure. These foundational principles counsel us to abstain from exercising jurisdiction here."); *Feehan*, 506 F. Supp. 3d at 618 ("The court agrees . . . that the relief the plaintiff requests—asking a federal judge to order a state governor to decertify the election results for an entire state and direct that governor to certify a different outcome—constitutes 'an extraordinary intrusion on state sovereignty from which a federal court should abstain under longstanding precedent.'"). Here, too, the Court should decline to intrude on the State's administration of elections, especially given the Plaintiffs' utter failure to state a plausible claim.

## CONCLUSION

For the foregoing reasons, Defendant JB Pritzker respectfully requests that the Court grant his motion to dismiss Plaintiffs' Second Amended Complaint.

Respectfully submitted,

KWAME RAOUL
Attorney General of Illinois

By: /s/ *Marci L. Sahinoglu*
Marci L. Sahinoglu
Assistant Attorney General
100 W. Randolph Street, 13th Floor
Chicago, Illinois 60601
312.636.5595
marci.sahinoglu@ilag.gov

*Counsel for Defendants*