IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION



FILED
1/8/2024
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

EW

| | |
|---|---|
| **ROCHELLE M. MALY, JAMES R. STIRN**, and **JENEANE L. FERGUSON**, *acting pro se*,<br><br>Plaintiffs,<br><br>v.<br><br>**J.B. PRITZKER**, *in his official capacity as Governor*; **IAN K. LINNABARY, CASANDRA B. WATSON, WILLIAM J. CADIGAN, LAURA K. DONAHUE, TONYA L. GENOVESE, CATHERINE S. MCCRORY, WILLIAM M. MCGUFFAGE, RICK S. TERVEN, SR**. *in their official capacities at the Illinois State Board of Elections,*<br><br>Defendants. | No. 1:22-cv-04778 |

## PLAINTIFFS' OPPOSITION RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

### INTRODUCTION

Plaintiffs have filed a Second Amended Complaint (ECF No. 44), which is a Civil Rights Action, whose summary is as follows:

1. Per expert first-hand witness testimony from an intelligence operative who is a trained crypto linguist and election expert, Plaintiffs vote on election machines that are compromised. All electronic voting systems make use of cryptography; have FROG-like cyphers for encryption purposes which make use of a secret key which is used as both data and a set of instructions

1

resulting in the manipulation of the vote tallies to a desired outcome. This key is a decipher key/Master Key for which the Plaintiffs' expert witness Terpsehore Maras is one of a select few to have knowledge of due to the participation in a 1999 meeting when it was pitched. Per Maras testimony, all US and Global elections since 2000 have made use of a Master Key resulting in all US elections since 2000 being compromised and will continue to be due to this technology. This expert testimony is further corroborated by another expert, an election expert, Dr. Alex Halderman, whose report was created and utilized in Curling v. Raffensperger, 493 F. Supp. 3d 1264, 1272-73 (N.D. Ga. 2020), where the testimony and report was referred to as substantive and voluminous evidence which included ability and consequences of exploiting cryptography.

2. Expert testimony yields that regardless as to whether the algorithm is activated in Illinois, the threat is real and imminent as it is in every machine and used for a desired outcome.

3. Expert testimony explained how audits cannot find the fraud as well as cited studies/instances. Maras testimony did include symptoms of the fraud for which Plaintiffs demonstrated data instances of the symptoms with Illinois data and beyond.

4. The Illinois State Board of Elections (SBE) have approved these compromised machines for use in Illinois.

5. Consequently, Plaintiffs have suffered emotional harm as well as Constitutional rights violations as a result of the Illinois SBE approving these systems for use in Illinois.

6. Federal law requires accuracy, (1) The terms "vote" or "voting" shall include all action necessary to make a vote effective in any primary, special, or general election, including, but not limited to, registration, listing pursuant to this chapter, or other action required by law prerequisite to voting, casting a ballot, and having such ballot counted properly and included in the appropriate totals of votes cast with respect to candidates for public or party office and propositions for which votes are received in an election.[1] The only solution is to eliminate such technology from the voting process given cryptography is meant to disguise. Per expert's affidavit (Second Amended Complaint - Exhibit A), the vote anonymizing process is being exploited for which the expert testimony further explains why audits don't discover this. There can be no assurances of the ballot counted properly when there is no transparency in regards to the vote tallying.

In response, Defendants have filed dismissal motions: Motion to Dismiss Defendant J.B. Pritzker (ECF No. 56), Defendant JB Pritzker's Memorandum in Support of His Motion to Dismiss (ECF No. 57) and SBE Defendants' Motion to Dismiss (ECF No. 58).

**PLAINTIFFS' OPPOSITION RESPONSE TO SBE DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED**

---

[1] 52 USC § 10310(c)(1)

**COMPLAINT**

ECF No. 58 adopts and incorporates by reference Section I and Section II of ECF No. 57 pg. nos. 3-9 for the SBE Defendants.

Section I states Plaintiffs plead only conclusions and therefore have not met the pleading standard.

Section II states the Plaintiffs lack standing to bring Plaintiffs' claim.

Plaintiffs hereby submit its opposition to SBE Defendant's Motion to Dismiss the Second Amended Complaint (ECF No. 44). The Plaintiffs' Complaint not only meets but exceeds the standards governing the form of a complaint as required by Federal Rule of Civil Procedure 8(a). Specifically, this Court has personal jurisdiction over the Defendant, and the complaint sufficiently alleges causation and harm. Accordingly, Defendant's motion for the SBE should be denied.

**ARGUMENT**
Section I

In ECF No. 57 Section I, Defendants state Plaintiffs have not alleged any relevant facts to support the premise on which the claims are based. Plaintiffs dispute this as provided in the Second Amended Complaint ECF No 44 ¶6-10, 47-53, 58, 65-93. The standing arguments leveraging these facts are covered in ECF No 44 ¶43-63 and reiterated here within Section II below.

In Section I, Defendants cite the Exhibit 1, Maras affidavit, is unsigned and therefore the Court should afford it no weight. This was explained to the Court in the hearing on September 27, 2023 and the explanation satisfied the Court. Plaintiffs subsequently fixed the exhibit which has since been docketed as of September 27, 2023 as ECF 60.

Further, Defendants state it contains no facts specific to Illinois. While citing it contains no facts to defendant Pritzker, it does not state that it contains no facts to SBE Defendants. In regards to facts relevant for Illinois, these facts are covered in ECF No 44 ¶6-10 as Maras includes in her affidavit that the vote manipulation occurs in all machines as they run the same software which thereby includes Illinois. The standing arguments leveraging these facts are covered in ECF No 44 ¶43-63, further elaborated in ECF No 44 ¶64-93 and reiterated here within Section II below.

It further references other cases stating, "nearly identical election claims relying on an affidavit from Maras have been brought and rejected in federal Courts across the country."…"discussing five other cases that relied on the "Trapdoor mechanism" raised in the Maras affidavit that were properly dismissed…". Plaintiffs vehemently dispute this characterization. The specific facts stated in this case have never been adjudicated in a Court of law. Specifically, the existence of the FROG and the purchase of the Master Key by the CIA and its use in elections with our expert witness present are unique to this complaint (ECF No. 44 ¶72, 73, 78, ECF No. 44 Exhibit 1 ¶13-18, 104-105,107-112,124). Additionally, the Halderman Report (ECF No. 44 Exhibit 2) has never been disproven and therefore not been dismissed. And, by extension then, tying the unique facts of the Maras affidavit to the Halderman report has never been presented in a complaint and therefore never adjudicated. In fact, since the filings of ECF Nos. 56-58, the cited case Plaintiffs have referenced in regards to the Halderman Report (Second Amended Complaint ECF No 44 ¶6,36,44,45,59,77), there has been an Opinion and Order issued. On November 10, 2023, in the Opinion and Order, the Halderman Report was shown as credible and used as a basis for granting Standing (*Curling v Raffensperger Case 1:17-cv-02989-AT Document 1705 N.D.*

*Ga. 2023)* and a bench trial is scheduled to commence on January 9, 2024. Plaintiffs highlight the court ruling to note the important role the Halderman Report played in the ruling. Plaintiffs explain the facts from the Halderman Report that are relevant to Plaintiffs' complaint in the Second Amended Complaint ECF No 44, ¶6,8-10,58-59,76-77 and further explain how it corroborates the Maras affidavit and vice versa.

Section I further states, "no nexus between those allegations and their claims against Defendant Pritzker." The SBE Defendants are omitted from this argument. Consequently, no argument is made to claim a nexus is not established between the allegations and SBE Defendants.

## Section II

In ECF No. 57 Section II, pgs 4-9, contains the dismissal motion for lack of standing. The Defendants do not dispute any of Plaintiffs' specific standing arguments but instead generally dispute standing.

Plaintiffs have made the standing arguments in the Second Amended Complaint (ECF No. 44) ¶44-63 and included in Second Amended Complaint (ECF No. 44) ¶43 the standing requirement to ensure the subsequent standing arguments satisfied all aspects of the three-part standing test.

*Lujan v. Defenders of Wildlife (90-1424)*, 504 U.S. 555 (1992), the Supreme Court created the three-part test to determine whether a party has standing to sue: 1) the Plaintiff must have suffered an "injury in fact," meaning that the injury is of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent 2) there must be a causal connection between the injury and the conduct brought before the Courts 3) it must be likely, rather than speculative, that a favorable decision by the Court will redress the injury.

6

The facts establishing satisfaction for Part 1 of the test (the Plaintiff must have suffered an "injury in fact," meaning that the injury is of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent) are contained in Second Amended Complaint (ECF No. 44) ¶7-11, 44, 46-61,62,63 and reinforced in Section I of this response as well as below. In ruling on a motion to dismiss, Courts "must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff" Paradise Divers, Inc. v. Upmal, 402 F.3d 1087, 1089 (11th Cir. 2005) (citation omitted); see also Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295 (11th cir. 2007) ("We have held many times when discussing a Rule 12(b)(6) motion to dismiss, that the pleadings are construed broadly, and that the allegations in the complaint are viewed in the light most favorable to the plaintiff." (internal citations and quotation marks omitted)). To survive Rule 12(b)(6) scrutiny, however, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing Court to draw on its judicial experience and common sense." Id. at 679 (citation omitted). If there are "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim, there are plausible" grounds or recovery, and a motion to dismiss should be denied. Twombly, 550 U.S. at 556. The claim can proceed "even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Id. (citation and internal quotation marks omitted). But the "[f]actual allegations must be enough to raise a right to relief above the

speculative level." Id. at 555. [2] Plaintiffs' expert witness, with first hand knowledge as a whistleblower, explains in great detail how all electronic voting machines are designed for fraud.

Second Amended Complaint (ECF No. 44) ¶46 "Allegations of fraud, a realistic danger of sustaining direct injury is sufficient to confer Article III standing"…

Second Amended Complaint (ECF No. 44) ¶47-53 articulate the facts the Plaintiffs were active in the election process and witnessed the 2020 General Election plan executed almost exactly as evidence of the pre-determined outcome as depicted in the Maras affidavit.

Second Amended Complaint (ECF No. 44) ¶54 articulates the emotional injury incurred by Plaintiffs. "…intangible concrete injury, analogous to that associated with the common-law tort…"

Second Amended Complaint (ECF No. 44) ¶55 alleges future harm given expert testimony. "Supreme Court precedent does not "uniformly require plaintiffs to demonstrate that it is literally certain that the harms they identify will come about" – hence, the "substantial risk" standard."

Second Amended Complaint (ECF No. 44) ¶56 alleges standing is further justified based upon the McMorris test. "…established that Courts should consider three non-exhaustive factors when analyzing whether an alleged "risk of identity theft or fraud is sufficiently 'concrete, particularized, and ... imminent…These factors are: (i) whether the data at issue has been compromised as the result of a

---

[2] Greene v. Alabama Department of Revenue et al (MAG+), No. 2:2016cv00561 - Document 36 (M.D. Ala. 2017)

8

targeted attack intended to obtain the data; (ii) whether at least some portion of the compromised dataset has been misused, even if plaintiffs' particular data has not yet used for identity theft or fraud; and (iii) whether the type of data is more or less likely to subject plaintiffs to a perpetual risk of identity theft or fraud…expert testimony supports (i) data at issue has been compromised through malicious software specifically designed to mask the vote manipulation leveraging the most advanced means of doing so (ii) voting data has been misused even if our specific votes were not and (iii) the process was designed in the way to stealthily manipulate the vote so this will continue in perpetuity until redressable action is taken…"

Second Amended Complaint (ECF No. 44) ¶57 establishes further harm beyond emotional such that there are four harms specified by the Constitution itself as the manipulation of Plaintiffs' vote is a violation of: 1) Free Speech rights as Plaintiffs' vote is Plaintiffs' Freedom of Speech 2) Due Process as the Defendants' actions as representatives of the State are preventing life, liberty and pursuit of happiness by allowing electronic voting systems that manipulate the vote 3) Equal Protection as the votes are manipulated giving different weight to votes 4) Discrimination Protection as votes are weighted against one political belief/philosophy. "…injuries to First Amendment rights to free speech and free exercise of religion may amount to concrete injuries…"

Second Amended Complaint (ECF No. 44) ¶58 contains the facts that Halderman demonstrates how knowing the cryptographic key results in the ability to alter the vote as well as with malicious software while Maras' affidavit demonstrates how and why establishing these facts as concrete not hypothetical.

9

"Massachusetts v. EPA, 415 F.3d 50 (D.C. Cir. 2005) In the Supreme Court opinion Justice Stevens cited scientific expert affidavit in establishing standing."

Second Amended Complaint (ECF No. 44) ¶59 contains the facts of Maras' affidavit providing the evidence required to prove the vote manipulation is actual, imminent and ongoing. Maras is a first-hand witness and expert. In ¶62, a study is cited that showed the existence of a cryptographic trapdoor.

Second Amended Complaint (ECF No. 44) ¶60 contains the facts establishing this is a bipartisan issue as the fraud occurred in 2004 against John Kerry which also further establishes this is longstanding as included in Maras affidavit.

Second Amended Complaint (ECF No. 44) ¶61 establishes the standing argument that while the vote manipulation occurs for all electronic voting systems, there is still injury in fact as long as the harms described satisfy concreteness. ("[W]here a harm is concrete, though widely shared, the Court has found 'injury in fact' ".

Second Amended Complaint (ECF No. 44) ¶62 contains the factual argument for the Court to consider there may not be a common law for establishing injury in fact and Plaintiffs seek standing on statutory basis.

Second Amended Complaint (ECF No. 44) ¶63 contains the argument to grant standing in the public interest based upon the need for judicial review when there is a conflict of interest with the legislative branch.

The facts establishing satisfaction for Part 2 of the test (there must be a causal connection between the injury and the conduct brought before the Courts) are contained in Second Amended Complaint (ECF No. 44) ¶44, 64-78. These paragraphs establish the

Defendants approve the electronic voting systems that violate Plaintiffs' Constitutional rights. As the expert testimony yields, all electronic voting systems in all elections run the same software designed for vote manipulation and have the ability to manipulate the vote in each election by making use of undetectable software for the specific purpose of controlling the election outcomes.

The facts establishing satisfaction for Part 3 of the test (it must be likely, rather than speculative, that a favorable decision by the Court will redress the injury) are contained in Second Amended Complaint (ECF No. 44) ¶7-11,44,45,62,64-65,79-92,94-96. These paragraphs establish the facts that all electronic voting systems in all elections run the same software designed for vote manipulation and manipulate the vote in each election by making use of undetectable software for the specific purpose of controlling the election outcomes. A favorable decision of getting rid of the electronic voting systems and replacing with hand counted paper ballots will eliminate the electronic vote manipulation that allows for wide spread electronic vote manipulation.

### PLAINTIFFS' RESPONSE TO DEFENDANT JB PRITZKER MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

Defendants have filed dismissal motions: Motion to Dismiss Defendant J.B. Pritzker (ECF No. 56) and Defendant JB Pritzker's Memorandum in Support of His Motion to Dismiss (ECF No. 57).

### ARGUMENT
Section I-Section VI
Plaintiffs do not oppose the motion to dismiss Defendant JB Pritzker.

### CONCLUSION

For the foregoing reasons and all the others discussed in Plaintiffs' Second Amended Complaint (ECF No. 44), the present Motion to Dismiss SBE Defendants should be denied. Additionally, Plaintiffs do not oppose the motion to dismiss Defendant JB Pritzker.

Respectfully submitted this day,

8 January 2024

*/s/ Rochelle M. Maly*
Rochelle Maly, acting pro se
315 Indiana Court, Unit B
Bloomingdale, IL  60108
630-272-4488
rmaly22@gmail.com

*/s/ James R. Stirn*
James Stirn, acting pro se
49 Thornhill Ct.
Burr Ridge, IL  60527
630.749.8194
jrstirn@criptext.com

*/s/ Jeneane L. Ferguson*
Jeneane L. Ferguson, acting pro se
24312 S. Burr Rd.
Channahon, IL 60410
815.693.9120
jlferf@comcast.net