IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROCHELLE M. MALY, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 22-cv-04778 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| J.B. PRITZKER, in his official capacity as ) | |
| Governor, et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER**

    SBE Defendants' motion to dismiss Plaintiffs' second amended complaint [58] is granted. The complaint is dismissed without prejudice for lack of standing. Defendant J.B. Pritzker's motion to dismiss Plaintiffs' second amended complaint [56] is granted as unopposed. Defendant Pritzker is deemed voluntarily dismissed as a Defendant. The Clerk is directed to enter Judgment. In addition, pursuant to Federal Rule of Civil Procedure 25(d), the Clerk is ordered to substitute Jennifer M. Ballard Croft, Christina D. Cray, and Jack Vrett as Defendants in place of Ian K. Linnabary, William J. Cadigan, and William M. McGuffage. See the accompanying Statement for details. Civil case terminated.

**STATEMENT**

    This case concerns a challenge to the use of electronic voting systems in Illinois by three individual plaintiffs. Due to the speculative nature of the alleged possible vote manipulation and the non-particularized injuries claimed by the plaintiffs, the Court finds that this dispute does not present a justiciable case or controversy. Thus, the plaintiffs' claims are dismissed without prejudice for lack of standing.

    **I.    Background**

    Plaintiffs Rochelle M. Maly, James R. Stirn, and Jeneane L. Ferguson have brought this action *pro se* pursuant to 42 U.S.C. § 1983 against Governor J.B. Pritzker ("Governor") and the eight individual members of the Illinois State Board of Elections ("SBE") in their official capacities.[1] In their Second Amended Complaint ("SAC"), which is now the operative complaint,

---

[1] The SBE is currently comprised of Casandra B. Watson, Laura K. Donahue, Jennifer M. Ballard Croft, Cristina D. Cray, Tonya L. Genovese, Catherine S. McCrory, Rick S. Terven, Sr., and Jack Vrett (collectively, SBE Defendants).

Plaintiffs allege that Defendants violated their "[c]ivil [r]ights" by "approving voting systems that allow for vote manipulation." (SAC ¶ 4, Dkt. No. 44.)

In particular, Plaintiffs take issue with the use of "electronic voting systems" in Illinois, although the SAC does not describe the exact machines used in this state. (*Id.* ¶ 44.) They assert claims for alleged violations of the First Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment, along with a claim for "Discrimination Protection." (*Id.* ¶¶ 29–31, 36, 57.) As relief, Plaintiffs seek an order prohibiting the use "of the voting systems in the State of Illinois . . . for another election" and requiring that "the electronic voting system be replaced with a hand-counted secure paper ballot manual reporting process under closed circuit television beginning with [the] General Election [in] 2024." (*Id.* at 44.)

Throughout the SAC, Plaintiffs extensively cite "[e]xpert testimony" for the proposition that "all electronic voting systems run the same software designed for vote manipulation." (*Id.* ¶ 44.) This "expert testimony" consists of two filings. The first is an affidavit from Terpsehore Maras ("Maras Affidavit"), in which she purports to describe vulnerabilities in electronic voting systems that have existed since 2000 and affected the results of the 2020 presidential election. (*Id.* ¶¶ 6–7, 10; *see also* SAC, Ex. 1, Maras Aff., Dkt. No. 60.) The second is an expert report, dated July 1, 2021, from Alex Halderman ("Halderman Report"), which was prepared in connection with litigation in Georgia, *Curling v. Raffensperger*, No. 1:17-CV-2989 (N.D. Ga.), and purports to describe vulnerabilities in the ballot-marking devices that Georgia began using in 2020. (SAC ¶¶ 6, 8; *see also* SAC, Ex. 2, Halderman Report, Dkt. No. 46.) Neither the Maras Affidavit nor the Halderman Report focuses on the voting system used in Illinois.[2] Instead, the SAC refers almost exclusively to alleged deficiencies in the use of electronic voting machines as a general matter. (*E.g.*, SAC ¶¶ 44, 61, 65.) To that end, Plaintiffs allege that the findings from the Halderman Report buttress the attestations from the Maras Affidavit as to the exploitable deficiencies inherent in all electronic voting machines. (*Id.* ¶¶ 9, 77.)

The Governor has filed a motion to dismiss, arguing, among other things, that Plaintiffs lack standing and that the SAC lacks sufficient factual allegations. (Dkt. No. 56.) SBE Defendants incorporate those two arguments in their own motion to dismiss. (Dkt. No. 58.) Plaintiffs do not contest the Governor's request for dismissal of the claims against him (Pls.' Resp. Br. at 11–12, Dkt. No. 67), and so he is voluntarily dismissed from this case. Plaintiffs do, however, contest dismissal of the claims against the SBE Defendants.

**II.   Discussion**

This dispute can be resolved on the grounds of standing alone. "Standing is a threshold requirement because it derives from the Constitution's limit on federal courts' authority to resolve 'cases' and 'controversies.'" *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020) (quoting U.S. Const. art. III, § 2, cl. 1). Standing is "essential;" without it, federal courts

---

[2] The Halderman Report does mention that the same type of machine that is the subject of the report "was used in parts of" other states, including Illinois, in 2020. (Halderman Report at 9.) The Halderman Report, however, is tailored specifically to Georgia's use of the machine. (*See id.* at 1 (distinguishing Georgia's use from the use in other states).)

have no subject-matter jurisdiction over a case. *Id.* Indeed, there is no exception to the necessity of standing, even if the plaintiffs argue that a government action would otherwise be exempt from challenge. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 420 (2013) ("[T]he assumption that if [the plaintiffs] have no standing to sue, no one would have standing, is not a reason to find standing." (quoting *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 489 (1982)). A defendant may challenge standing at the pleading stage with a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1009–10 (7th Cir. 2021).

As the parties invoking federal jurisdiction, Plaintiffs bear the burden of showing standing. *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1064 (7th Cir. 2020). To resolve a facial challenge to subject-matter jurisdiction, courts must accept well-pleaded allegations as true and draw all reasonable inferences in favor of the non-moving parties. *Silha v. ACT, Inc.*, 807 F.3d 169, 173–74 (7th Cir. 2015). Courts may also consider documents incorporated by reference in the complaint. *Bakopoulos v. Mars Petcare US, Inc.*, No. 20 CV 6841, 2021 WL 2915215, at *1 (N.D. Ill. July 12, 2021). Ultimately, the question is whether the plaintiffs "plausib[ly]" allege standing—that is, whether they "allege sufficient factual matter to support the inference that standing exists." *In re Recalled Abbott Infant Formula Prod. Liab. Litig.*, 97 F.4th 525, 528 (7th Cir. 2024) (internal quotation marks omitted). Because Plaintiffs here are *pro se*, the Court applies a lenient standard when reviewing their pleadings. *E.g.*, *Pillow v. McDonough*, No. 22-CV-6337, 2024 WL 4213216, at *8 (N.D. Ill. Sept. 16, 2024).

Article III standing entails three elements, each of which must be satisfied: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Of particular importance is the injury-in-fact element. *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1151 (7th Cir. 2020). It requires "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc.*, 578 U.S. at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

To start, an injury in fact must be "actual or imminent." This "ensure[s] that the alleged injury is not too speculative for Article III purposes." *Lujan*, 504 U.S. at 564 n.2. No doubt, an alleged risk of future injury may, in theory, support standing. *E.g.*, *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 692–94 (7th Cir. 2015). But a claimed future injury "must be certainly impending." *Clapper*, 568 U.S. at 410. If the injury instead "relies on a highly attenuated chain of possibilities"—if it is only "**possible**"—it is too conjectural to support standing. *Id.* at 409–10 (internal quotation marks omitted).

Plaintiffs here point to the risk of future election interference in Illinois as the source of their injuries. In fact, the SAC never alleges outright that election interference actually occurred in Illinois; it focuses instead on the risk of election fraud as a general matter and accuses SBE Defendants of enabling such fraud to potentially occur in Illinois by approving the use of electronic voting machines. (*See, e.g.*, SAC ¶ 46 (alleging "a realistic danger of sustaining direct

3

injury" through voting fraud); *see also* Pl.'s Resp. Br. at 9–10 (citing allegations that largely concern a risk of future harm as supporting the injury-in-fact element).)³

Many courts have addressed similar allegations in recent years. And the results are nearly universal: the claims are dismissed because the plaintiffs allege overly speculative injuries. *See, e.g.*, *Mancini v. Delaware County*, No. CV 24-2425, 2024 WL 4123785, at *3 (E.D. Pa. Sept. 9, 2024) ("[T]o the extent Plaintiffs claim Defendants' use of uncertified and untested election machines **could** deprive them of their votes in the future, the Complaint's allegations are too speculative and conjectural to support Article III standing."). A decision from the Ninth Circuit is especially instructive. *Lake v. Fontes*, 83 F.4th 1199 (9th Cir. 2023), *cert. denied,* 144 S. Ct. 1395 (2024). There, the complaint did not allege that "any electronic tabulation machine in Arizona"—the state at issue—had "ever been hacked," despite the plaintiffs "cit[ing] opinions by purported experts on manipulation risk and alleg[ing] that difficulties have occurred in other states using electronic tabulation systems." *Id.* at 1202. Instead, the allegations of harm "relie[d] on a long chain of hypothetical contingencies that [had] never occurred in Arizona and must take place for any harm to occur." *Id.* at 1204 (internal quotation marks omitted). For example, in addition to assuming that a bad actor would "actually" exploit "security failures" in voting machines to "manipulate an election," the injury rested on the premise that "Arizona's specific procedural safeguards [would] fail to detect the manipulation." *Id.* (internal quotation marks omitted); *see also id.* at 1204 n.7 (distinguishing these conjectures from the allegations of hacking raised in the same Georgia case Plaintiffs cite here). The Ninth Circuit concluded that the plaintiffs were engaging in "the kind of speculation that stretches the concept of imminence 'beyond its purpose.'" *Id.* at 1204 (quoting *Lujan*, 504 U.S. at 564 n.2). It therefore affirmed the dismissal of the complaint for lack of standing. *Id.*

In this case, Plaintiffs engage in similar speculation when they allege that votes in Illinois might be subject to tampering in the future. Accepting the allegations in the SAC as true, as the Court must at this stage in the proceedings, the use of electronic voting systems carries the risk of vote interference, and vote interference has occurred in some states (of which the identities are not clear) in prior elections (to an uncertain extent). (*E.g.*, SAC ¶¶ 9–10, 44, 50, 58–61.) Completely absent from the SAC are factual allegations about the risk of interference in Illinois specifically. Plaintiffs' efforts to combine the Maras Affidavit with the Halderman Report to support a generalized risk of vote interference present in all states "relies on a long chain of hypothetical contingencies"—that all states are susceptible to hacking in the same fashion, no matter the precise machines they use, their unique election laws, and other idiosyncrasies. *Lake*, 83 F.4th at 1204 (internal quotation marks omitted). Though such logic may suffice to allege that election interference is possible in Illinois (and even that is uncertain), it does not show that the

---

³ The closest the SAC comes to alleging interference in a past Illinois election is a reference to a "significant injection of Biden votes" in Illinois during the 2020 election. (SAC ¶ 80.) But the SAC describes the vote spikes as mere "symptoms" of "nefarious behavior" (*id.*), and the exhibit cited with this allegation states it is simply describing where spikes supposedly occurred—not their cause (SAC, Ex. 8, Vote-Spikes Report at 1 (emphasis omitted), Dkt. No. 52). Even for *pro se* plaintiffs, more factual detail is needed to plausibly allege that vote tampering has occurred in Illinois. *Cf. Dinerstein v. Google, LLC*, 73 F.4th 502, 514 (7th Cir. 2023) (concluding that allegations of a past harm did "not cross the plausibility threshold").

interference is "certainly impending." *Clapper*, 568 U.S. at 409–10. As a result, Plaintiffs' alleged injuries are too speculative to support standing.

Furthermore, Plaintiffs fail to allege particularized injuries, a separate aspect of the injury-in-fact element. *Spokeo, Inc.*, 578 U.S. at 339. Particularization means that "the plaintiff ***himself*** must have ***personally*** suffered an actual injury or an imminent threat of injury," as opposed to "a generalized grievance shared by all members of the public." *Larkin*, 982 F.3d at 1064. This, too, is an issue that commonly arises in voting-rights cases. As the Seventh Circuit recently explained in the context of a claim that accepting "untimely" mail-in ballots violates federal law, "[a]n injury to an individual's right to have the government follow the law, without more, is a generalized grievance that cannot support standing 'no matter how sincere.'" *Bost v. Ill. State Bd. of Elections*, 114 F.4th 634, 640 (7th Cir. 2024) (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013)); *see also Lake*, 83 F.4th at 1203 (holding that the plaintiffs did not plead a particularized injury when they did "not allege that the tabulation of ***their*** votes will be manipulated").

Here, the concern Plaintiffs raise regarding the risk of possible election interference is one all voters in Illinois would share. They do not allege that such interference is more likely to affect their votes than the votes of others. *Cf. Bost*, 114 F.4th at 640 ("[E]ven if we were to accept [the plaintiffs'] premise that inclusion of these [untimely] ballots would cause vote dilution, their votes would be diluted in the same way that every other vote cast in Illinois prior to Election Day would be diluted.").[4] Plaintiffs attempt to differentiate themselves by highlighting the degree of their involvement in the electoral process, most notably by alleging that one Plaintiff—Stirn—had previously served as election judge but no longer plans to do so given his newfound mistrust of electronic voting machines. (SAC ¶¶ 52, 54.) Plaintiffs never argue that Stirn would be prohibited from serving as an election judge, however. *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) ("Article III standing screens out plaintiffs who might have only a general legal, moral, ideological, or policy objection to a particular government action."). And even if his decision could in theory amount to an injury in fact, plaintiffs may not "manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416. As explained above, any fear Plaintiffs have about election interference in Illinois is too speculative to support standing.

In short, Plaintiffs do not sufficient allege the imminence required to show an injury in fact; the vague allegations in the SAC at most show that election interference is merely possible in Illinois. Indeed, the lack of allegations regarding Illinois specifically means that Plaintiffs have also failed to plead sufficient factual allegations to support their claims as required by Federal Rule of Civil Procedure 8. *Reinoehl v. Centers for Disease Control & Prevention*, No. 22-1401, 2022 WL 14461946, at *3 (7th Cir. Oct. 25, 2022), *cert. denied,* 143 S. Ct. 2586 (2023). Separately, the concern Plaintiffs express over the integrity of Illinois elections is one that all

---

[4] Though Plaintiffs raise a claim for "discrimination protection" in connection with their vague allegation that "votes are weighted against one political belief/philosophy" (SAC ¶ 57), they also insist that "this is a bipartisan issue" (Pls.' Resp. Br. at 10). It is thus unclear whether Plaintiffs are attempting to suggest that certain voters are more likely to be affected than others based on political affiliation—much less how, if at all, such a practice would affect Plaintiffs themselves.

Illinois voters would share—meaning their injuries are not particularized, another aspect of an injury in fact. And without an injury in fact, Plaintiffs lack standing. *Spokeo, Inc.*, 578 U.S. at 338.

### III. Conclusion

For the reasons stated above, Plaintiffs lack standing. SBE Defendants' motion to dismiss (Dkt. No. 58) is granted, and the corresponding claims are dismissed without prejudice. *Markakos v. Medicredit, Inc.*, 997 F.3d 778, 782 n.1 (7th Cir. 2021). Pritzker's motion to dismiss (Dkt. No. 56) is granted as unopposed; those claims are deemed voluntarily dismissed. Plaintiffs previously have amended their complaint twice: once as a matter of course pursuant to Federal Rule of 15(a)(1) within 21 days after Defendants served motions under Rule 12(b) (Dkt. No. 25), and once with leave of Court pursuant to Federal Rule of 15(a)(2) (Dkt. No. 41.) Accordingly, the Court finds that any further amendment to the complaint in an attempt to allege standing would be futile. Judgment will be entered and this case will be closed. Although the dismissal for lack of standing is without prejudice, Plaintiffs are advised that this a final, appealable order. If they seeks to appeal this decision, they must file a notice of appeal in this Court within 30 days after the entry of the final judgment on the Court's docket. *See* Fed. R. App. P. 4(a)(1).

Dated: September 30, 2024

_____
Andrea R. Wood
United States District Judge